IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GERALD WILLIAMS                     *
                                    *
            v.                      *     Civil No. JFM-05-3030
                                    *
MARYLAND OFFICE RELOCATORS          *
                                  *****

MEMORANDUM

Gerald Williams brings this action against his former employer, Maryland Office

Relocators, LLC, under the Fair Labor Standards Act ("FLSA"), the Maryland Wage & Hour

Law ("MWHL"), and the Maryland Wage Payment & Collection Law ("MWPCL").  Discovery

has been completed, and both parties have moved for summary judgment.  The respective

motions will be granted in part and denied in part.[1]

I.

The primary question presented is whether plaintiff, while employed by defendant, fell

within a class of employees over whom the Interstate Commerce Commission ("ICC") has the

power to establish "qualifications and maximum hours of service."  If he does not fall within this

exemption, (the "Motor Carrier Act exemption"), it is undisputed that he is entitled to overtime

pay.  If, on the other hand, he does fall within the exemption, it is undisputed that he is not

entitled to overtime pay.

Plaintiff fell within the exemption if he was "a loader" within the meaning of 29 C.F.R. §

782.5.  That regulation defines a "loader" as an employee:

---

[1]Plaintiff originally filed this action on behalf of similarly situated employees, as well as himself, see 29 U.S.C. §216(b), but he no longer is pursuing a class action because it has become apparent that plaintiff is *sui generis* as to his overtime claim.

of a carrier subject to section 204 of the Motor Carrier Act (other than a driver or driver's helper as defined in §§ 782.3 and 782.4) whose duties  include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

The critical consideration in determining whether an employee falls within the Motor Carrier Act exemption is whether his activities "affect safety of operation" of a motor vehicle in interstate commerce. *See Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1007 (4th Cir. 1997) (*quoting United States v. American Trucking Assn's*, 310 U.S. 534, 553 (1940).  Therefore, where the "continuing duties of the employee's job had no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimus, the exemption will not apply to him in any workweek so long as there is no change in his duties."  29 C.F.R. §782.2(b)(3).

In the present case plaintiff - who was serving as a supervisor for defendant during the time period relevant to this litigation - testified that it was his job to "take control of the whole move" and to "make sure everything went smoothly."  Pl. dep. at 46-47.  However, according to plaintiff's deposition, his oversight responsibility extended only to assuring that furniture and equipment was properly carried to the motor vehicle by which it was being transported.  Thus, he further testified that his "job was to make sure . . . that everything was taken out of the building, make sure the guys get it on the truck, send it over to the next side, like we have one building to the next building."  *Id.*

On cross-examination, plaintiff acknowledged that he did occasionally load trucks, and he agreed with opposing counsel's statement (posed in a leading question) "that when . . . [he] put the load in the truck . . . [he had] to put it in a certain way so it . . . didn't shift when they are driving." Pl. dep. at 44.   However, during his deposition he expressly stated that he loaded trucks only "very rarely," and he submitted a post-deposition affidavit, reiterating that he loaded trucks only "very rarely" and that "[t]o clarify, . . . he only physically helped a driver lift furniture approximately once a year and, during those times, the driver was always responsible for placing and securing it."[2]   Moreover, plaintiff's testimony in this regard followed unequivocal testimony immediately preceding it that "the driver is fully responsible for his own truck." Pl. dep. at 43.

Defendant seeks to counter plaintiff's deposition testimony by submitting the affidavit of its comptroller, Firman Kistler, Jr..  Kistler avers, *inter alia*, that as part of his job duties and responsibilities, plaintiff "was expected to oversee the safety of the operation, assisting with the safe loading and unloading of MOR trucks, train new employees in the proper and safe use of MOR equipment, and make sure that the work was done properly and safely.  In particular, . . . [plaintiff] was responsible for ensuring that the trucks were loaded in a safe manner, to protect the load and prevent accidents if the load were to shift on the road.  Kistler Aff. at ¶7.[3]

---

[2]In its reply memorandum defendant suggests that under *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1985), plaintiff's affidavit should be disregarded because it contradicted his deposition testimony.  This argument is misplaced.  The affidavit is entirely consistent with plaintiff's deposition testimony and merely supplements it.

[3]Although I do not find the point dispositive, I note that Kistler's description of the job duties and responsibilities of a supervisor are far broader than those contained in defendant's Job Description for the position.  Pl.'s Cross-Motion for Summary Judgment, Ex. 3.

The flaw in defendant's position is that the question of whether a particular employee is a "loader" requires an individualized determination into the actual work performed by that employee.  *See generally Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947); *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1108 (4th Cir. 1997).  Although Kistler states that his affidavit is based upon personal knowledge, when he speaks of plaintiff's activities he asserts only that he knows about the duties and responsibilities of plaintiff's supervisor position.  He does not assert that he has any knowledge about what plaintiff actually did at any particular job site.  The defendant has the burden of proving that the Motor Carrier Act exemption applies.  *See, e.g.*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).  Defendant has failed to present the testimony of any person supervised by plaintiff, who saw plaintiff on a job, any truck driver or mover, who worked with plaintiff on a job, or indeed any operations manager contradicting plaintiff's own description of the work he actually performed.

## II.

Because I find the Motor Carrier Act exemption applies, plaintiff is entitled to overtime pay under the FLSA and the MWHL.  The parties have stipulated that the amount of plaintiff's unpaid overtime compensation for the two years preceding his leaving the employ of defendant was $3,635.97.  Two ancillary questions relating to plaintiff's claims under the FLSA and the MWHL remain, however.  First, is plaintiff entitled to liquidated damages under the FLSA?  Second, was defendant's non-payment of plaintiff's overtime compensation "willful" so as to entitle plaintiff to three, rather than two, years of back overtime pay?  *See* 29 U.S.C. §255(a).

## A.

An employer who violates the terms of the FLSA "shall be liable to the employee or

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages."  29

U.S.C. § 216(b).  The Fourth Circuit has held that a grant of liquidated damages is the "norm" in

cases in which the FLSA is violated.  *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

However, "if the employer shows to the satisfaction of the court that the act or omission giving

rise to such action was in good faith and that he had reasonable grounds for believing that his act

or omission was not a violation of the Fair Labor Standards Act," a court may refuse to award

liquidated damages, or may award liquidated damages in an amount less than that of the unpaid

overtime compensation.  29 U.S.C. § 260.  The employer "bears the plain and substantial burden

of persuading the court by proof that his failure to obey the statute was both in good faith and

predicated upon such reasonable grounds that it would be unfair to impose upon him more than a

compensatory verdict."  *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960).

Courts hold employers to a high standard in determining whether good faith and

reasonable grounds have been shown.

> It is not enough, for instance, to plead and prove ignorance of the
> wage requirements.  Knowledge will be imputed to the offending
> employer. . . .  Nor does the complete ignorance of the possible
> applicability of the [FLSA] shield the employer from liability for
> liquidated damages.  Good faith requires some duty to investigate
> potential liability under the [FLSA].

*Rogers v. Savings First Mortgage*, 362 F. Supp. 2d 624, 638 (D. Md. 2005) (citing *Reeves v.*

*Int'l Telephone & Telegraph Corp.*, 616 F.2d 1342 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077

(1981)).

Here, in attempting to meet its burden of establishing its good faith and reasonable

grounds for not paying overtime to plaintiff, defendant merely states in conclusory fashion that

it:

> acted with the reasonable belief that Williams, and its drivers, loaders and supervisors, were covered by the Motor Carriers' Act and therefore exempt from the payment of overtime wages.  The application of the Motor Carriers' Exemption is complex and confusing and could easily lead an employer attempting to act in good faith to the wrong conclusion.  As the liquidated damages provision of the FLSA is not intended to be punitive, double the overtime allegedly due to Williams would be unfair.

These averments are entirely insufficient.  Defendant has cited no authority for the proposition that complexity or uncertainty of an overtime payment issue itself can give rise to a good faith defense.  Where a question is complex or uncertain, an employer at the least must show that it made a diligent investigation into the issues and concluded not to pay overtime based upon the results of its investigation.  Defendant has presented no such evidence here, and it is therefore liable for liquidated damages.

B.

The statute of limitations under the FLSA is normally two years.  29 U.S.C. § 255(a).  If a plaintiff can demonstrate that the defendant's violation was "willful," however, the plaintiff may recover for the preceding three years.  *Id.*; *see also Martin v. Deiriggi*, 985 F.2d 129, 135 (4th Cir. 1992) (stating that plaintiff "may recover an additional year of back wages when a violation is willful").  The Supreme Court has held that violations are "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe*, 486 U.S. 128, 133 (1988).  The plaintiff bears the burden of proof on the issue of whether the defendant's actions were willful.  *Id.* at 135 ("To obtain the benefit of the 3-year exception, the Secretary [of Labor] must prove that the employer's conduct was willful.").

Here, plaintiff argues that the record reflects that defendant acted willfully because

6

defendant contends that it should not be liable for liquidated damages because the Motor Carrier Act Exemption is confusing and difficult to apply. This contention is unpersuasive. The mere fact that defendant has contended during the course of this litigation that the fact that the Motor Carrier Act exemption is complex does not demonstrate that at the time it decided not to pay overtime compensation to plaintiff it was acting with knowledge or reckless disregard that it was violating the FLSA. Proof of willfulness must be far stronger, such as evidence that the defendant had previously been investigated for FLSA violations, or evidence of a scheme by the employer to cover-up FLSA violations. *See, e.g.*, *Chao v. Self Pride, Inc.*, 2005 U.S. Dist. Lexis 11653, *30-34 (D.Md. 2005) (finding genuine dispute of material fact as to whether defendants were given specific warnings regarding FLSA violations that they did not heed); *see also Martin v. Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1992) (finding evidence that the employer destroyed and withheld records in order to block the Department of Labor's investigation of FLSA violations supported finding of willfulness); *see also Cubias v. Casa Furniture and Bedding, LLC*, 2007 U.S. Dist. Lexis 3380 (E.D. Va. 2007) (granting plaintiff's summary judgment motion as to the issue of willfulness when defendant had split employees' hours between its two companies so that it appeared on each individual company's books that the employees were working less than 40 hours a week, and defendant had also signed an employment verification form stating that employees were being paid overtime when they were not).

III.

Plaintiff's final claim is for treble damages under the MWPCL. The claim is without merit.

In *McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 474-75 (D. Md. 2004), Judge Blake

dismissed as a matter of law a claim for overtime pay asserted under the MWPCL.  Judge Blake

reasoned as follows:

> The MWPCL limits the availability of treble damages, however, to violations of § 3-502
> or § 3-505.  Section 3-502 deals with the timing of payment, and Section 3-505 deals
> with payment on cessation of employment.  In contrast, McLaughlin's minium wage and
> overtime claims are based on his entitlement to the wages themselves.  He does not allege
> that Freedmont failed to pay him regularly, but that it failed to pay him enough; and he
> does not allege that Freedmont failed to pay him minimum wage and overtime due him
> upon his termination, but that it failed to pay him these wages at all.

Plaintiff attempts to distinguish *McLaughlin* on the ground that here he specifically

alleges that defendant failed to pay him overtime due to him upon the termination of his

employment.  I find the distinction unpersuasive.  The gravamen of the holding in *McLaughlin*

was not that the plaintiff had failed to allege or refused to pay overtime upon termination but that

his overtime claim turned entirely upon the question of whether overtime pay was due at all,

precisely the same issue as presented in this case.  Plaintiff's claim is governed by the FLSA and

the MWHL, not the MWPCL.[4]

A separate order effecting the rulings made in this memorandum is being entered

herewith.


Date: April 23, 2007                            /s/_____
                                                J. Frederick Motz
                                                United States District Judge


_____

[4]I recognize, as argued by plaintiff, that in *Friolo v. Frankel*, 819 A.2d 354, 362 (Md.
2003), the Maryland Court of Appeals ruled that the plaintiff was entitled to bring a claim for
overtime pay under both the MWHL and the MWPCL.  *Friolo*, however, is different both from
*McLaughlin* and this case in that there plaintiff's claim for overtime compensation became ripe
only when defendant terminated her employment and failed to honor what plaintiff alleged was a
contract between them to give her a 5% ownership interest in his medical practice.